In re James CRISPINO, Debtor.

James CRISPINO, Plaintiff,

v.

CHEMICAL BANK NEW JERSEY, N.A., Defendant.

Bankruptcy No. 92–31551.
Adv. No. 93–3009.

United States Bankruptcy Court,
D. New Jersey.

Nov. 17, 1993.

Howard A. Teichman, Markowitz & Zindler, Lawrenceville, NJ, for plaintiff.

Carol Ann Slocum, Klehr, Harrison, Harvey, Branzburg & Ellers, Cherry Hill, NJ, for defendant.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This shall set forth the court's decision on a motion by defendant Chemical Bank New Jersey, N.A. (hereinafter "Chemical Bank" or "the Bank") for summary judgment in this adversary proceeding. The complaint filed by plaintiff James Crispino (hereinafter "the debtor") sought a determination of the validity, priority and extent of a ship's mortgage held by Chemical Bank on a party fishing boat owned by the debtor. The complaint also requested a determination of the validity, priority and extent of a judicial lien on the

vessel created by Chemical Bank's levy pursuant to a default judgment which it obtained against the debtor. However, as this adversary proceeding has progressed it has become clear that the debtor does not dispute the validity, priority or extent of the ship's mortgage. What the debtor actually seeks is a judgment compelling Chemical Bank to honor an alleged oral agreement to accept payments over time on the debt. Since the debtor alleges that this agreement was reached before Chemical Bank obtained its default judgment against the debtor, this motion raises issues as to whether the relief which the debtor seeks is barred under the doctrines of res judicata, collateral estoppel, or the entire controversy doctrine. For the reasons which follow, Chemical Bank's motion for summary judgment is granted.

This court has jurisdiction under 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

### FACTS

The essential facts of this matter are undisputed. Beginning in 1988, the debtor began to borrow money from Horizon Bank to construct a boat known as "The Enterprize." The debtor took advances and made payments of interest over a two year period. In 1990, Horizon Bank merged with Chemical Bank.

On June 15, 1990, the debtor executed and delivered a note in favor of Chemical Bank for the principal amount of $137,000.00.[1] The note was secured by a ship's mortgage executed by Patricia Callahan, attorney-in-fact for the debtor and delivered on December 4, 1989.[2] The ship's mortgage was perfected by filing with the United States Coast Guard on March 15, 1990.

Under the terms of the note, payment of the entire principal amount of $137,000.00 was due on August 14, 1990. The debtor defaulted, but subsequently made some payments on the loan in the months of April through September 1991. Chemical Bank filed a complaint in April 1991 in the New Jersey Superior Court. The debtor never answered the complaint and on December 12, 1991, default judgment was entered in favor of Chemical Bank for $155,712.00, costs and $1,612.78 for attorneys fees and expenses.

On March 10, 1992 the debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the Bankruptcy Code). The debtor then filed the complaint commencing this adversary proceeding.

### CONCLUSIONS OF LAW

#### I.

On a motion for summary judgment, the moving party has the initial burden of demonstrating that "there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.PRO. 56(c). If the movant meets this burden, then the burden shifts to the opposing party to present evidence demonstrating a genuine issue of material fact. FED.R.CIV.PRO. 56(e). The opposing party must present evidence demonstrating a triable issue of fact, and can not merely rely on allegations or denials contained in the pleadings. FED.R.CIV.PRO. 56(e). On a motion for summary judgment the court must resolve any doubts as to genuine issues of material fact in favor of the opposing party. *Meyer v. Riegel Products Corp.*, 720 F.2d 303 (3d Cir. 1983).

According to the debtor, the loan officer at Horizon agreed to loan additional amounts necessary to complete the boat, and that the debtor could make monthly payments after the boat was completed from the earnings on the boat. In 1990, Horizon Bank merged with Chemical Bank, N.A. Mr. Hutchinson, a Chemical Bank loan officer, then told the debtor that they would not loan him any more funds to complete the boat, and the entire balance of the loan would be due

---

1. The $137,000.00 note was a renewal note for the total principal owed under all previous notes executed by the debtor for the advances by the Bank.

2. Patricia Callahan is a representative of Horizon Documentation Service, Inc. On April 21, 1988, the debtor gave Horizon Documentation Service, Inc. a power of attorney for the specific purpose of executing the ship's mortgage.

shortly. The debtor obtained funds elsewhere and completed the boat in late 1991. The debtor alleges that in 1991, Chemical Bank agreed to accept monthly payments on the loan balance and forego any legal action.

The debtor maintains that he spoke with Mr. Hutchinson after receiving the complaint and summons in June 1991 and Mr. Hutchinson told him he would "take care of it." The debtor states that based on these statements he continued to make monthly payments and did not retain an attorney or challenge the lawsuit. In October 1991, Mr. Hutchinson spoke with the debtor and told him the Bank was going to proceed to judgment. The debtor allegedly asked Mr. Hutchinson to "honor the bank's agreement to give ... monthly terms for repayment," and Mr. Hutchinson told the debtor that he would discuss it after he obtained a judgment. The debtor believed that Chemical Bank was going to file a new lawsuit in order to obtain judgment. The debtor received notice of the default judgment in December 1992. He alleges that he then tried to contact Mr. Hutchinson, and that Mr. Hutchinson has refused to speak with him.

The debtor admits that he borrowed money from Horizon Bank which is now part of Chemical Bank, N.A. Moreover, the debtor does not dispute signing or executing the note in favor of Chemical Bank, nor does he dispute the amount borrowed or owed to Chemical Bank, N.A. as successor to Horizon Bank.[3] The debtor admits that he executed a valid mortgage on the "Enterprize" in favor of Chemical Bank to secure the loan for $137,000.00. The debtor admits that Chemical Bank holds a valid default judgment

against him. The debtor argues, however, that because of the alleged oral agreement prior to the judgment for payment of the debt in monthly installments, the debtor is entitled to pay the debt in such installments notwithstanding Chemical Bank's judgment and levy. In other words, the debtor asks this court to ignore the state court default judgment.

## II.

■■■ The ultimate issue on this motion is whether the debtor is barred from challenging the New Jersey Superior Court judgment. The full faith and credit statute provides that "judicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. Therefore, relitigation of a judgment is precluded in federal courts to the same extent that such relitigation is precluded in the rendering state as determined by the law of that state. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) ("As one of its first acts, Congress directed that all United States courts afford the same full faith and credit to state court judgments that would apply in the State's own courts."); *Gregory v. Chehi*, 843 F.2d 111 (3d Cir.1988) ("A federal court applying preclusion principles is bound by the Full Faith and Credit Statute, and must give a prior state judgment the same effect as would the adjudicating state."); *Al–Khazraji v. St. Francis College*, 784 F.2d 505, 509 (3d Cir.1986) (Third

---

**3.** The debtor does raise a question as to whether payments made by him to Chemical Bank during 1991 were correctly credited by the Bank. Debtor asserts in his Certification in Opposition to Motion of Chemical Bank New Jersey, N.A.'s Motion for Summary Judgment that the payments were 3,000.00 in April 1991, 1,000.00 in May 1991, 2,000.00 in June 1991, 2,000.00 in July 1991, 2,000.00 in August 1991 and 2,000.00 in September 1991. In his deposition, however, the debtor testified that he made $9,000.00 in payments between the months of April 1991 through September 1991 of $9,000.00. Although the debtor does not remember how much was paid in each month, the debtor maintains that total payments were $9,000.00. Chemical

Bank's records indicate that the debtor made the following payments: June 19, 1990, $1,000.00; April 25, 1991, $3,000.00; May 29, 1991, $1,000.00; June 24, 1991, $1,000.00; August 6, 1991 $2,000.00; September 9, 1991, $2,000.00. Because $9,000.00 in payments as testified to by the debtor is consistent with the Bank's record of payments for 1991, there is no inconsistency between the debtor's testimony and the Bank's records on this point. More importantly, however, for the reasons set forth in this opinion any potential defense by the debtor as to the amount due to the Bank was waived when the debtor defaulted in the Bank's state court suit against him.

Circuit applied Pennsylvania law of res judicata to state court judgment stating that "[t]he Rules of Decision Act, 28 U.S.C. § 1652 requires federal courts to give a prior state court judgment the same res judicata effect as would be provided by the courts of that state."). It follows that New Jersey law of res judicata, collateral estoppel, and the entire controversy doctrine will apply to determine if the relief which the debtor seeks is barred by the New Jersey Superior Court judgment.

## A. Res Judicata

Having determined that New Jersey law applies, the next issue is whether under New Jersey law, res judicata is applicable to default judgments, and if so, whether res judicata bars the debtor's challenges to the Chemical Bank's default judgment.[4]

The debtor argues that res judicata does not bar his claim because it was entered by default. Specifically, the debtor relies on *Texas Company v. Di Gaetano*, 71 N.J.Super. 413, 177 A.2d 273 (App.Div.1962), *aff'd*, 39 N.J. 120, 187 A.2d 721 (1963), wherein the New Jersey Appellate Division stated that while a default judgment is conclusive "between the parties for whatever is essential to support the judgment, it is conclusive only as

**4.** The United States Supreme Court has held that res judicata is applicable to default judgments under the full faith and credit clause of the United States Constitution in the context of a state court judgment and a subsequent second action in another state court. *Morris v. Jones*, 329 U.S. 545, 550–51, 67 S.Ct. 451, 455–56, 91 L.Ed. 488 (1947). Specifically, the court noted that "[a] judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default." *Id.* at 550–51, 67 S.Ct. at 455 (quoting *Riehle v. Margolies*, 279 U.S. 218, 225, 49 S.Ct. 310, 313, 73 L.Ed. 669 (1929)).

**5.** The legal principle cited from *Phillips v. Phillips* is better understood in the context of the complete discussion of the *Phillips* court. The *Phillips* court explained that:

It is sometimes said that a judgment by default is conclusive in a second suit, on another cause of action, as to the material facts well pleaded in the complaint upon which the default judgment was based. Certainly the estoppel is no broader. 34 C.J. 892. A narrower statement of the estoppel is contained in *Cromwell v. Sac*

to such matters or issuable facts as were properly averred in the complaint ... A judgment by default does not estop a defendant as to matters which he might have affirmatively pleaded." *Id.*, 71 N.J.Super. at 432, 177 A.2d 273 (citing *Phillips v. Phillips*, 118 N.J.Eq. 189, 192, 178 A. 265 (Ch.1935)), *rev'd on other grounds*, 119 N.J.Eq. 462, 183 A. 220 (E. & A.1936), *aff'd in part*, 119 N.J.Eq. 497, 183 A. 222 (E. & A.1936). The debtor places most of his reliance on the second sentence in the quoted passage, arguing that affirmative defenses may now be raised. However, the statement that a default judgment does not estop the defendant "as to matters which he might have affirmatively pleaded" refers to collateral estoppel, not res judicata.[5] Moreover, *Di Gaetano* involved a motion to vacate a default judgment, rather than a determination of the effect of such judgment in a subsequent case. The discussion in *Di Gaetano* of the preclusive effects of default judgments in subsequent cases was *dictum* offered as an additional argument to support its decision to vacate the default judgment in that case. In affirming the Appellate Division's decision in *Di Gaetano*, the New Jersey Supreme Court did not even mention the Appellate Division's discussion of the preclusive effects of default judgments in subsequent cases.

*County*, 94 U.S. 351, 356, 24 L.Ed. 195: 'A judgment by default only admits for the purpose of the action the legality of the demand or claim in the suit; it does not make the allegations of the declaration or complaint evidence in an action upon a *different claim.*' To the same effect is *Skinner v. Franklin County*, 56 F. 783, 6 C.C.A. 118. A judgment by default does not estop defendant as to matters which he might have affirmatively pleaded.

*Id.*, 118 N.J.Eq. at 192, 178 A. 265. The *Phillips* court was merely explaining the operation of the principle of collateral estoppel when different claims are litigated. Indeed, the *Skinner* case involved an action on coupon bonds "never before at issue" and, therefore, the court concluded that the defendant was not estopped from raising defenses in an action to determine the validity of the coupons that were not raised in a preceding action on a different bond brought by a different party. *Skinner v. Franklin County*, 56 F. 783, 785 (7th Cir.1893). *See also, Township of Brick, Ocean County v. Vannell*, 55 N.J.Super. 583, 151 A.2d 404 (App.Div.1959) (Collateral estoppel bars defendant "from raising such questions of fact as were actually litigated in first suit, but not those which could have been raised but were not.")

The New Jersey Supreme Court has explained the distinction between res judicata and collateral estoppel as follows:

[ ]the doctrine of collateral estoppel or estoppel by judgment is an extension of the principle of Res adjudicata, but there is a fundamental distinction between the two principles which must be borne in mind. The distinction is stated in the much-cited case of *City of Paterson v. Baker*, 51 N.J.Eq. 49, at page 53, 26 A. 324, at page 325 (Ch.1893), wherein the court said: 'There is a plain difference, resting on obvious considerations of justice, as was held in *Cromwell v. Sac County*, 94 U.S. 351, 24 L.Ed. 195, and again in *Bissell v. Spring Valley Township, supra* (124 U.S. 225, 8 S.Ct. 495, 31 L.Ed. 411), between the effect of a judgment, as a final and conclusive determination of the rights of the parties, when it is set up in a second action resting on the same claim or demand on which the first was founded, and its effect when it is set up in a subsequent litigation between the same parties, founded upon a different claim or cause of action. In the first, where the second suit is based upon the same claim or demand involved in the first, the judgment in the first must be treated as a finality, 'concluding,' in the language of Mr. Justice Field, in *Cromwell v. Sac County, supra* (94 U.S. at page 352), 'parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment.

* * * But where the second action is upon a different claim or demand, but between the same parties, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action,—not what might have been thus litigated and determined;' for it is only upon such matters as were actually litigated and determined that the judgment is conclusive.'

*Mazzilli v. Accident & Casualty Insurance Co.*, 26 N.J. 307, 313, 139 A.2d 741 (1958). One New Jersey court has elaborated on the operation of res judicata as follows:

In respect to the first phase in which the question of estoppel presents itself, it is entirely settled that after one judicial determination by a court of competent jurisdiction, a second suit *for the same matter,* between the same parties or their privies, cannot be relitigated in the same or any other court. Nor does it matter that, in the first suit, evidence existed which was withheld or undiscovered, or that the law was misconceived by the court, or left uncited by counsel, or that no defense was made and *judgment went by default,* or that only one of several defenses was interposed by the defendant; in spite of any of these defects in the prosecution or defense of the action, the judgment stands as an absolute bar against a second litigation of *the same cause of action.*

*Katz v. Sims*, 25 N.J.Misc. 415, 54 A.2d 483 (Ct. of Common Pleas, Monmouth Cty, 1947) (emphasis added).[6] Other New Jersey

---

**6.** The Restatement (Second) of Judgments § 18 also applies res judicata to default judgments, stating that:

When a valid and final personal judgment is rendered in favor of the plaintiff:

(1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; and

(2) In an action upon the judgment, *the defendant cannot avail himself of defenses he might have interposed,* or did interpose, in the first action.

RESTATEMENT (SECOND) OF JUDGMENTS § 18 (1977) (emphasis added). Comment a, explains that "[i]t is immaterial whether the judgment was rendered upon a verdict or upon a motion to dismiss or other objection to the pleadings or

courts have also stated that res judicata applies to default judgments. *See e.g., Evangel Baptist Church v. Chambers,* 96 N.J.Super. 367, 370–71, 233 A.2d 82 (Ch.Div.1967); *Girard Trust Co. v. McGeorge,* 128 N.J.Eq. 91, 101, 15 A.2d 206 (Ch.1940) ("It is quite true that a judgment be default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one rendered after answer and contest."); *Phillips v. Phillips,* 118 N.J.Eq. 189, 192, 178 A. 265 (Ch.1935), *rev'd on other grounds,* 119 N.J.Eq. 462, 183 A. 220 (1936); *Riverside Apartment Corporation v. Capitol Construction Co.,* 107 N.J.Eq. 405, 415, 152 A. 763 (Ch.1930), *aff'd,* 110 N.J.Eq. 67, 158 A. 740 (1932). On the other hand, collateral estoppel is not applicable to default judgments. *See e.g., Slowinski v. Valley National Bank,* 264 N.J.Super. 172, 624 A.2d 85 (App.Div.1993).

 Res judicata requires a final judgment by a court of competent jurisdiction and identity of causes of action, issues and parties. *See Culver v. Insurance Co. of North America,* 115 N.J. 451, 461, 559 A.2d 400 (1989). A default judgment is a final judgment and would bar all further litigation of the action. *See e.g., Evangel Baptist Church v. Chambers,* 96 N.J.Super. 367, 370–71, 233 A.2d 82 (Ch.Div.1967) ("I have found no authority indicating that a default judgment, properly entered, has any less binding effect upon possible future interests in land than a judgment entered in a contested matter."). By contrast, collateral estoppel requires only identity of parties and issues and bars only relitigation of those issues. Such issues, however, must have been "fully and fairly litigated in the prior proceeding" for collateral estoppel to apply. *N.M. v. J.G.,* 255 N.J.Super. 423, 605 A.2d 709 (App.Div. 1992). Whereas res judicata does apply to default judgments, collateral estoppel will not because the issues have not been "fully and fairly litigated." *See e.g., Id.* (Son was not precluded from challenging paternity allegedly established in divorce judgment because res judicata was inapplicable where son was not a party to original divorce action, and

collateral estoppel did not bar claims where divorce was entered by default and issue of paternity was, therefore, not litigated.).

 Under the doctrine of res judicata, if the debtor's current action is upon the same claim or demand as the original action and involves the same parties, then this action is barred even though the debtor defaulted in the prior action. *Culver v. Insurance Co. of North America,* 115 N.J. 451, 461–62, 559 A.2d 400 (1989). There is no dispute that this action involves the same parties as the original action. To determine if the debtor's action is the same as that in the first action the court must consider:

(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions);

(2) whether the theory of recovery is the same;

(3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first);

(4) whether the material facts alleged are the same.

*Id.* In applying this test to a default judgment it is important to note that res judicata bars "all matters litigated and determined by such judgment but also as to all relevant issues which could have been presented, but were not." *Id.* (citations omitted).

 In this case the acts complained of are the same. The first suit involved breach of contract. The second suit, although alleging a subsequent oral modification of the contract, involves the same contract and the same liability of the debtor on the note. Although the debtor argues that he is only challenging the Bank on when payment is due, that argument boils down to an affirmative defense which the debtor could have raised in the state court case to the effect that he was not in default under the note. The acts complained of were the same for

upon consent, confession, *or default."* RESTATEMENT (SECOND) OF JUDGMENTS § 18 cmt. a (1977)

(emphasis added).

purposes of res judicata. In addition, the demand for relief is the same, i.e., a determination of when payment is due on the note.

Second, the theory of recovery is the same. The first suit was based on a breach of contract, specifically, default on the note. The second action by the debtor alleges a breach of contract by Chemical Bank on an alleged oral agreement to modify that note.

Finally, the material facts alleged and evidence necessary to maintain the second action are the same for purposes of res judicata, namely the documentary evidence regarding the debt and the testimony of the Bank's witnesses and the debtor regarding the alleged oral agreement. Because the debtor's claim is the same as that involved in the first action, the issues are the same and the parties are the same, the court concludes that res judicata applies to bar the debtor's cause of action.

### B. The Entire Controversy Doctrine

 The debtor's challenge to the default judgment is also barred under New Jersey law by the entire controversy doctrine. The New Jersey Court Rules provide:

Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64–5 (foreclosure actions) and R. 4:67–4(a) (leave required for counterclaims or cross-claims in summary actions).

R. 4:30A. The New Jersey Appellate Division has held that the entire controversy doctrine is applicable to default judgments. *Mori v. Hartz Mountain Development Corp.*, 193 N.J.Super. 47, 55–56, 472 A.2d 150 (App. Div.1983). In so holding, the Appellate Division emphasized the difference between the entire controversy doctrine and collateral estoppel. The court stated that:

[B]oth the scope and purpose of the entire controversy doctrine differ from that of the doctrine of collateral estoppel. The difference in scope is ... that, when applying the collateral estoppel doctrine, the inquiry must always be as to the point or question actually litigated and determined in the original action—not what might have been thus litigated and determined—for it is only upon such matters as were actually litigated that the judgment is conclusive. On the other hand, the entire controversy doctrine applies not only to matters actually litigated, but to all aspects of a controversy that might have been thus litigated and determined. Further, while the objective of collateral estoppel is to ensure judicial finality ... the objective of the entire controversy doctrine is ... to eliminate delay, prevent harassment of a party and unnecessary clogging of the judicial system, avoid wasting the time of parties and effort of parties and promote fundamental fairness.

*Id.* at 55–56, 472 A.2d 150 (citations omitted). The purposes of the entire controversy are similar if not identical to the purposes of res judicata. Just as res judicata is fully applicable to default judgments, so is the entire controversy doctrine. Therefore, any claim the debtor might have made against Chemical Bank regarding the debt in question is barred by application of the entire controversy doctrine to the default judgment obtained in the New Jersey Superior Court.

### C. Modifying or Vacating Default Judgment

 The debtor's complaint could also be construed as an action to modify or vacate the state court default judgment. The debtor asks that this court determine that Chemical Bank may only demand payment of the judgment in installments. The state court judgment contained no such limitation.

 Bankruptcy courts do not have the power to consider the merits of a state court proceeding and vacate a state court default judgment. *Raymark Industries, Inc. v. Lai*, 973 F.2d 1125, 1132 (3d Cir.1992); *James v. Draper (In re James)*, 940 F.2d 46, 53 (3d Cir.1991) (bankruptcy court may only vacate a void judgment). There is no allegation that the state court judgment is void. If the debtor thought he had a valid challenge to the judgment, he should have moved to vacate the judgment in New Jersey Superior

Court.[7] To the extent the debtor's complaint could be construed as an action to vacate or otherwise modify the state court judgment it is, likewise, denied.[8]

### CONCLUSION

The court concludes that the debtor's cause of action is barred by res judicata and the entire controversy doctrine. Moreover, this court does not have the power to vacate or otherwise modify the state court judgment. Since the debtor does not dispute the validity of Chemical Bank's ship's mortgage, he has failed to raise any genuine issue of material fact precluding summary judgment. Chemical Bank's motion for summary judgment dismissing the complaint is therefore granted. The Bank's attorney shall submit a form of judgment within ten days under D.N.J.Bankr.Ct.R. 4(c).

7. Even after the default judgment was entered, the debtor could have moved to set it aside under N.J.Court Rules 4:43–3 and 4:50–1 for any of the following reasons:

(a) mistake, inadvertence, surprise, or excusable neglect;

(b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49;

(c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(d) the judgment or order is void;

(e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application;

or (f) any other reason justifying relief from the operation of the judgment or order.

R.R. 4:43–3, 4:50–1.

8. It must be noted, however, that this adversary proceeding and motion have not raised any issue as to whether payment of the judgment can be extended under any provisions of the Bankruptcy Code. The parties' arguments in this adversary proceeding have been limited to the effect of the default judgment on the claim of alleged oral modification of the note payment terms.